DISTRICT OF NEW MEXICO
ALBUQUERQUE, NEW MEXICO

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS**

I, RUSSELL STANFORD, having been sworn, depose and state as follows:

## I.     AGENT'S BACKGROUND

I am a Special Agent (SA) of the Department of Interior, United States Fish and Wildlife Service, Office of Law Enforcement (USFWS/OLE) and have been so employed since August 2008.  Before becoming a Special Agent, I served six years as a Wildlife Inspector with the USFWS/OLE at the port of New York.  I have approximately thirteen years of law enforcement experience and am currently assigned to the Albuquerque, New Mexico field office.  I successfully completed the Criminal Investigator Training Program and the USFWS Special Agent Basic School at the Federal Law Enforcement Training Center (FLETC).  I have also attended many conferences, seminars, and in-service training courses sponsored by a variety of professional organizations and law enforcement agencies.  Prior to my federal service, I earned a Bachelor's Degree in Wildlife Management at Frostburg State University in Frostburg, Maryland.

As a federal law enforcement agent, I am authorized to investigate possible violations of federal law and to execute search warrants issued under the authority of the United States.  I have authored and/or assisted in numerous search warrant applications and have executed those warrants in the performance of my law enforcement duties.

## II.     PURPOSE OF THE SEARCH WARRANTS

Since 2012, the Department of the Interior, USFWS, and the Indian Arts and Crafts Board ("IACB") have been conducting a nationwide investigation of the sale of counterfeit Native American jewelry.  I am the lead investigator and have been attached to the IACB since March of 2012.  As such, I am responsible for investigating violations of the Indian Arts and Crafts Act.

Based on this investigation, I know that Sterling Islands ("Sterling"), and other businesses associated with Sterling ("the Sterling Coalition"), work in concert to design, import and fraudulently sell counterfeit Native American jewelry in violation of the Indian Arts and Crafts Act, specifically 18 U.S.C. § 1159.  I also have discovered that members of the Sterling Coalition, including, but not limited to, Jawad Tawfiq Khalaf, Sheda Khalaf, Nader Khalaf,  Nashat Khalaf, Zaher Mostafa, Arafat H. Nimer, Mohammad Manasra, Nael Ali, Christina Bowen, Mohammad Sharifi, Soraya Sharifi, Yousef Nassar, Taha Shawar, Ismael Momeni, and Ala Shawabkeh have been linked to the operation of approximately ten retail and wholesale businesses that sell

1

Sterling's counterfeit Native American-style jewelry in New Mexico. These businesses, primarily located in areas of high tourist activity, are used by the Sterling Coalition to fraudulently sell Native American-style jewelry, which was manufactured in the Philippines, as genuine Native American-made jewelry. The following diagram was produced to visually depict the relationships among the Sterling Coalition that my investigation has uncovered:



This affidavit is submitted in support of applications to search the following premises, described more particularly in Attachment A, which is attached hereto and fully incorporated herein. A more complete description of the facts establishing probable cause is set forth in Part V below. There is probable cause to believe that the items to be seized as described in Attachment B, which is attached hereto and fully incorporated herein, will be located at the premises described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 542 (importation by false or fraudulent practice), 19 U.S.C. § 1304 (failure to mark goods with country of origin), 18 U.S.C. § 1159 (violation of the Indian Arts and Crafts Act), and 18 U.S.C. § 371 (conspiracy).

| No. | Business Name | Search Location/ Property | Role |
|-----|---------------|---------------------------|------|
| 1 | Sterling Islands | 5815 Menaul Blvd. Albuquerque, NM | Importer / Wholesaler |
| 2 | Al Zuni | 1603 West Hwy 66, Gallup, NM | Wholesaler |
| 3 | Gallery 8 | 1919 Old Town Road NW #8, Albuquerque, NM | Retailer |
| 4 | Galleria Azul | 326A San Felipe St., Albuquerque, NM 87104 | Retailer |
| 5 | Mohammad Manasra (Sole Proprietor) | 2011 Chevrolet Express G1500 Cargo Van NM license plate number "NHR850" VIN "1GCSGAFX0B1140402" <br><br> 2005 Dodge Grand Caravan NM license plate number "MLA224" VIN "2D4GP44L55R166343" <br><br> 2002 Mercedes-Benz 500ML NM license plate number "MWH283" VIN "4JGAB75E52A323268" | Wholesaler/ Retailer |
| 6 | A.N. Jewelry | 2304 Cagua Dr. NE, Albuquerque, NM | Wholesaler |
| 7 | Sundancer Jewelry | 202 San Felipe NE, Ste. A, Albuquerque, NM | Retailer |
| 8 | Silver Coyote | 112 Old Santa Fe Trail, Santa Fe, NM | Retailer |
| 9 | Momeni's Gallery | 222 Old Santa Fe Trail, Santa Fe, NM 87501 | Retailer |
| 10 | Gold House LLC | 218 Old Santa Fe Trail, Santa Fe, NM 87501 | Retailer |

The facts contained in this affidavit are based upon my training and experience as well as the training and experience of other law enforcement agents and officers, information related to me by other agents and officers, and knowledge acquired from other sources during the course of this investigation. The investigatory

3

techniques include, but are not limited to, surveillance, undercover operations, forensic analysis, a review of import documents and declarations, travel documents, bank records and other financial documents, other interviews and records research, trash recovery operations, and interviews with Native American artists and industry experts. This affidavit is intended to show that there is probable cause for issuance of the search warrants and does not purport to set forth all of the evidence gathered to date during this three-year-long investigation.

### III.   BACKGROUND OF THE INDIAN ARTS AND CRAFTS ACT

On August 27, 1935, Congress created the Indian Arts and Crafts Board (IACB) to improve the economic status of Native Americans through the development and promotion of authentic Native American arts and crafts. 49 Stat. 891; 25 U.S.C. §§ 1158-1159. The 1935 Act adopted criminal penalties for selling items misrepresented as Native American made. This provision, which set fines not to exceed $500 or imprisonment not to exceed six months, or both, proved to be ineffective at stemming the flood of counterfeit Native American arts and crafts in the market.

In response to growing sales of counterfeit Native American arts and crafts negatively impacting the sale of authentic Native American products, Congress passed the Indian Arts and Crafts Act (IACA) of 1990, P.L. 101-644 (Act). Today, these counterfeits include a flood of overseas knock-offs, are tied to organized crime, and severely undercut Native American economies, self-determination, cultural heritage, and the future of an original American treasure. This Act is designed as a truth-in-advertising law meant to prevent products falsely marketed as "Indian Made" when the products are not, in fact, made by Indians as defined by the Act. The relevant criminal portion of the Act reads as follows:

(a) It is unlawful to offer or display for sale or sell any good, with or without a Government trademark, in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States.

(b) PENALTY.—Any person that knowingly violates subsection (a) shall—
     (1) in the case of a first violation by that person—
(A) if the applicable goods are offered or displayed for sale at a total price of $1,000 or more, or if the applicable goods are sold for a total price of $1,000 or more—
(i) in the case of an individual, be fined not more than $250,000, imprisoned for not more than 5 years, or both . . . .

18 U.S.C. § 1159. A subsequent amendment, the Indian Arts and Crafts Amendments Act of 2010, P.L. 111-211, allowed the IACB to refer cases to any federal law enforcement officer for investigation. In 2012, in response to the growing problem of counterfeit Native American arts and craft products, the IACB entered into a Memorandum of Agreement with the USFWS/OLE to develop an investigative unit to pursue violations of

IACA. I was the first special agent attached to that unit, and the requested search warrants supported by my investigation are in furtherance of that unit's mission.

## IV.   THE FEDERAL CHARGES RELATED TO THIS INVESTIGATION

As a result of this long-term investigation, on Tuesday, October 20, 2015, a federal grand jury sitting in Albuquerque, in the District of New Mexico, handed down a 4 count indictment (Criminal No. 14-CR-455 (JCH)), against 3 members or associates of the Sterling Coalition, as follows:

Count 1

1.   From on or about November 26, 2012, and continuing to on or about June 5, 2014, in Bernalillo County, in the District of New Mexico and elsewhere, the defendants, **NAEL ALI**, **CHRISTINA BOWEN**, and **MOHAMMAD MANASRA**, knowingly, unlawfully and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others known and unknown to the Grand Jury to commit violations of the Indian Arts and Crafts Act, contrary to 18 U.S.C. § 1159.

Manner and Means

2.   It was part of the conspiracy that **NAEL ALI** would make regular payments to **MOHAMMED MANASRA** to supply **NAEL ALI**'s jewelry stores with Native American-style jewelry manufactured in the Philippines.

3.   It was further part of the conspiracy that at **NAEL ALI**'s jewelry stores, **NAEL ALI** and his employees, including **CHRISTINA BOWEN**, would display, offer for sale and sell the Filipino-manufactured, Native American-style jewelry as genuine Native American-made jewelry.

Overt Acts

4.   In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of New Mexico, and elsewhere:

a.   From on or about November 26, 2012, and continuing to on or about June 5, 2014, **NAEL ALI**, owned and operated Gallery 8 and Galleria Azul, two distinct Native American-style arts and crafts retail stores in Old Town Albuquerque, New Mexico;

b.   From on or about November 26, 2012, and continuing to on or about June 5, 2014, **NAEL ALI**, owned and operated a separate Galleria Azul, a Native American-style arts and crafts retail store in Scottsdale, Arizona;

c.   From on or about November 26, 2012, and continuing to on or about June 5, 2014, **NAEL ALI**, employed **CHRISTINA BOWEN** to work at his stores Gallery 8 and Galleria Azul;

d.   On the following dates, **NAEL ALI** purchased from **MOHAMMAD MANASRA** Native American-style jewelry manufactured in the Philippines in the following amounts:

| Date | Check Signer / Memo | Amount | Payee |
|---|---|---|---|
| 12/10/2012 | Nael Ali / Galleria | $750 | Mohammad Manasra |

5

| | | | |
|---|---|---|---|
| | Azul (NM) | | |
| 12/18/2012 | Nael Ali / Gallery 8 | $750 | Mohammad Manasra |
| 1/15/2013 | Nael Ali / Gallery 8 | $750 | Mohammad Manasra |
| 4/20/2013 | Nael Ali / Galleria Azul (NM) | $400 | Mohammad Manasra |
| 5/25/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 6/11/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 6/21/2013 | Nael Ali / Galleria Azul (NM) | $300 | Mohammad Manasra |
| 6/25/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 8/20/2013 | Nael Ali / Galleria Azul (NM) | $550 | Mohammad Manasra |
| 10/8/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 10/9/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 10/23/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 11/11/2013 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 12/12/2013 | Nael Ali / Galleria Azul (AZ) | $1543 | Mohammad Manasra |
| 3/4/2014 | Nael Ali / Galleria Azul (AZ) | $1122 | Mohammad Manasra |
| 3/22/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 3/26/2014 | Nael Ali / Galleria Azul (NM) | $1500 | Mohammad Manasra |
| 4/15/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 4/15/2014 | Nael Ali / Galleria Azul (NM) | $750 | Mohammad Manasra |
| 5/4/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 5/16/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 8/20/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 9/18/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 10/6/2014 | Nael Ali / Gallery Azul (NM) | $500 | Mohammad Manasra |
| 3/21/2013 | Nael Ali / Gallery 8 | $851 | Mohammad Manasra |
| 4/28/2013 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 5/28/2013 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 6/11/2013 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |

e.  From on or about November 26, 2012, and continuing to on or about June 5, 2014, **MOHAMMAD MANASRA** supplied **NAEL ALI** with Native American-style jewelry manufactured in the Philippines;

f.  From on or about November 26, 2012, and continuing to on or about June 5, 2014, **NAEL ALI** and **CHRISTINA BOWEN**, and others known and unknown to the Grand Jury, displayed and offered for sale within Gallery 8 and Galleria Azul, Native American-style jewelry manufactured in the Philippines in a manner that falsely suggested it was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, and in excess of $1,000;

g.  From on or about November 26, 2012, and continuing to on or about June 5, 2014, **NAEL ALI** provided **CHRISTINA BOWEN** with a list of Native American artists' names to match the initials stamped on the Native American-style jewelry manufactured in the Philippines;

h.  On or about November 26, 2012, an employee of Gallery 8, known to the Grand Jury, sold for $689.08 two Native American-style rings stamped "CK," and a Native American-style pendent and earring set stamped "BB," all manufactured in the Philippines, to an undercover federal agent in a manner that falsely suggested they were Navajo produced, Navajo products, and the products of a particular Navajo artist and the Navajo tribe;

i.  On or about November 30, 2012, an employee working at Galleria Azul, known to the Grand Jury, sold for $96.30 a Native American-style ring stamped "OY," manufactured in the Philippines, to an undercover federal agent in a manner that falsely suggested it was Navajo produced, a Navajo product, and the product of the Navajo tribe;

j.  On or about April 23, 2013, **NAEL ALI**, sold jewelry, from his business Galleria Azul, to the Oneida Indian Nation in the amount of $28,085 for the purpose of supplying jewelry to an Oneida tribe gallery in upstate New York and the Oneida's participation in an international festival;

k.  On or about February 26, 2014, **CHRISTINA BOWEN**, while working at Gallery 8, told an undercover federal agent that the rings the agent had purchased on November 26, 2012, were made by the Navajo artist "Calvin Kee";

l.  On or about February 26, 2014, **CHRISTINA BOWEN** called **NAEL ALI** from the Gallery 8 store landline regarding an order of more Calvin Kee rings;

m.  On or about February 26, 2014, **CHRISTINA BOWEN**, while working at Gallery 8, told an undercover agent that she spoke with **NAEL ALI** and he told her he would speak with Calvin Kee to order more rings;

n.  On or about February 26, 2014, **CHRISTINA BOWEN**, while working at Gallery 8, told an undercover agent that Calvin Kee exclusively supplies Gallery 8 with his jewelry;

o.  On or about April 2, 2014, **CHRISTINA BOWEN**, told an undercover federal agent from her Gallery 8 store landline that the Calvin Kee rings were still being produced and that she

7

did not want to rush the artist and interfere with the production of his high quality product;

p.  On or about May 29, 2014, **NAEL ALI**, while working at Galleria Azul in Scottsdale, Arizona, sold for $120.00 a Native American-style ring stamped with a raincloud symbol, manufactured in the Philippines, to an undercover federal agent in a manner that falsely suggested it was Navajo produced, a Navajo product, and the product of the Navajo tribe;

q.  On or about May 29, 2014, **NAEL ALI**, made representations to an undercover federal agent that the rings the agent ordered at Gallery 8 on February 26, 2014, had been made by a Navajo artist, "Calvin Kee," though no such artist exists;

r.  On or about May 29, 2014, **NAEL ALI**, told an undercover federal agent that all the jewelry in his stores is made by Native Americans;

s.  On or about May 31, 2014, **CHRISTINA BOWEN**, while working at Gallery 8, told an undercover federal agent that **NAEL ALI** had spoken to the artist Calvin Kee about the agent's order and was informed by Calvin Kee that he could not make all the rings in brown as ordered because he ran out of brown stones;

t.  On or about August 14, 2014, **NAEL ALI**, sold jewelry, from his business Galleria Azul, to the Oneida Indian Nation for the amount of $9,850 for the purpose of supplying jewelry to an Oneida tribe gallery in upstate New York and the Oneida's participation in an international festival;

In violation of 18 U.S.C. § 371.

## Count 2

On or about February 26, 2014, in Bernalillo County, in the District of New Mexico, the defendant, **CHRISTINA BOWEN**, did knowingly display and offer for sale, and did sell for $1,000 and more, a good, specifically: jewelry, in a manner that suggested that the good was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States, when in truth and in fact, as she there and then well knew and believed, the good was not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

In violation of 18 U.S.C. § 1159.

## Count 3

From on or about February 26, 2014, and continuing to on or about June 5, 2014, in Bernalillo County, in the District of New Mexico, the defendants, **NAEL ALI** and **CHRISTINA BOWEN**, did knowingly display and offer for sale, and did sell for $1,000 and more, a good, specifically: jewelry, in a manner that suggested that the good was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States, when in truth and in fact, as they there and then well knew and believed, the good was not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

In violation of 18 U.S.C. § 1159, 18 U.S.C. § 2.

<u>Count 4</u>

On or about October 19, 2014, in Bernalillo County, in the District of New Mexico, the defendant, **MOHAMMAD MANASRA**, did knowingly display and offer for sale, and did sell for $1,000 and more, a good, specifically: jewelry, in a manner that suggested that the good was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, resident within the United States, when in truth and in fact, as he there and then well knew and believed, the good was not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

In violation of 18 U.S.C. § 1159.

Federal arrest warrants have been issued resulting from the indictment, and are to be served contemporaneously with the service and execution of the proposed search warrants.

## V.  FACTS SUPPORTING PROBABLE CAUSE

**1. Business Name:**       Sterling Islands, d.b.a., Rox Fine Silver and National Jewelry
                           Buyers

**Owner Names:**       Sheda Khalaf and Jawad T. Khalaf

**Search Location:**       5815 Menaul Blvd., Albuquerque, N.M. 87110

**Organizational Role:**       Importer/Wholesaler

Based on my investigation, I have reason to believe that Sterling, located at 5815 Menaul Blvd., Albuquerque, NM 87110, d.b.a., Rox Fine Silver and National Jewelry Buyers, has been importing Native American-style jewelry from the Filipino company, Fashion Accessories 4 U Corp. (FA4U), for over a decade.

Sheda Khalaf and Jawad Tawfiq Khalaf are listed as the President and Vice President of Sterling, respectively. Furthermore, research reveals that on November 12, 2006, Jawad Khalaf and Nader Khalaf were listed as Directors and Officers of FA4U by the Philippines Securities and Exchange Commission. Consultation with other agents, and general biographical data from law enforcement databases, supports that Jawad Tawfiq Khalaf is the father of Nader Jawad Khalaf and Sheda Khalaf.

Sterling is required to declare their commercial importations of jewelry to the USFWS, as the shipments contain wildlife products (i.e. shell products). From October 28, 2010, to October 16, 2015, Sterling has declared to the USFWS, upon importation from FA4U, approximately 300 shipments of jewelry with a total declared value of approximately $5 million. This number, however, significantly underrepresents the true value of the imports because of inconsistencies in the declaration method applied by Sterling. My own financial investigation approximates a true declared value of $11.8 million in imported jewelry for the same time period. All of these shipments listed FA4U as the foreign supplier and Sterling as the US importer, and all of the import declarations claim similar products consistent with the importation of Native American-style jewelry. In fact the UPS declarations specifically list "Fashion accessories jewelry" as the item of import.

An examination of Sterling's financial records for a similar time period revealed $6,355,599.89 in payments from Sterling to FA4U from June 18, 2010 to July 17, 2014. The payments were made by international wire transfer from a Sterling account with Bank of America (Acct. # 435017473826) to FA4U's Philippine-based bank account held with the Metropolitan Bank and Trust (Acct. #002236004389).

| Date | Sender | Amount | Payee |
|---|---|---|---|
| 6/18/2010 | Sterling (…3826) | $55,812.27 | FA4U (002236004389) |
| 6/23/2010 | Sterling (…3826) | $40,435.68 | FA4U (002236004389) |
| 7/03/2010 | Sterling (…3826) | $61,696.90 | FA4U (002236004389) |
| 7/10/2010 | Sterling (…3826) | $25,385.60 | FA4U (002236004389) |

| 8/11/2010 | Sterling (…3826) | $24,123.44 | FA4U (002236004389) |
|---|---|---|---|
| 8/13/2010 | Sterling (…3826) | $35,977.04 | FA4U (002236004389) |
| 8/18/2010 | Sterling (…3826) | $25,211.60 | FA4U (002236004389) |
| 9/01/2010 | Sterling (…3826) | $43,184.01 | FA4U (002236004389) |
| 9/03/2010 | Sterling (…3826) | $47,511.49 | FA4U (002236004389) |
| 9/16/2010 | Sterling (…3826) | $12,614.95 | FA4U (002236004389) |
| 10/17/2010 | Sterling (…3826) | $25,186.62 | FA4U (002236004389) |
| 10/23/2010 | Sterling (…3826) | $14,985.00 | FA4U (002236004389) |
| 10/26/2010 | Sterling (…3826) | $33,375.81 | FA4U (002236004389) |
| 11/07/2010 | Sterling (…3826) | $26,684.52 | FA4U (002236004389) |
| 11/16/2010 | Sterling (…3826) | $45,093.92 | FA4U (002236004389) |
| 11/23/2010 | Sterling (…3826) | $26,568.98 | FA4U (002236004389) |
| 11/29/2010 | Sterling (…3826) | $66,233.00 | FA4U (002236004389) |
| 12/02/2010 | Sterling (…3826) | $61,031.60 | FA4U (002236004389) |
| 12/06/2010 | Sterling (…3826) | $20,404.20 | FA4U (002236004389) |
| 12/10/2010 | Sterling (…3826) | $15,816.00 | FA4U (002236004389) |
| 1/09/2011 | Sterling (…3826) | $51,061.89 | FA4U (002236004389) |
| 1/12/2011 | Sterling (…3826) | $45,155.49 | FA4U (002236004389) |
| 1/14/2011 | Sterling (…3826) | $48,401.12 | FA4U (002236004389) |
| 1/24/2011 | Sterling (…3826) | $44,061.99 | FA4U (002236004389) |
| 1/26/2011 | Sterling (…3826) | $42,723.03 | FA4U (002236004389) |
| 2/15/2011 | Sterling (…3826) | $33,593.05 | FA4U (002236004389) |
| 2/16/2011 | Sterling (…3826) | $48,445.39 | FA4U (002236004389) |
| 2/24/2011 | Sterling (…3826) | $38,728.75 | FA4U (002236004389) |
| 2/25/2011 | Sterling (…3826) | $30,672.64 | FA4U (002236004389) |
| 3/08/2011 | Sterling (…3826) | $29,358.16 | FA4U (002236004389) |
| 3/17/2011 | Sterling (…3826) | $58,899.20 | FA4U (002236004389) |
| 3/24/2011 | Sterling (…3826) | $58,234.04 | FA4U (002236004389) |
| 3/29/2011 | Sterling (…3826) | $34,698.04 | FA4U (002236004389) |
| 4/07/2011 | Sterling (…3826) | $62,633.24 | FA4U (002236004389) |
| 5/06/2011 | Sterling (…3826) | $57,658.16 | FA4U (002236004389) |
| 5/14/2011 | Sterling (…3826) | $67,228.28 | FA4U (002236004389) |
| 6/03/2011 | Sterling (…3826) | $58,911.72 | FA4U (002236004389) |
| 6/15/2011 | Sterling (…3826) | $31,420.96 | FA4U (002236004389) |
| 6/18/2011 | Sterling (…3826) | $49,769.72 | FA4U (002236004389) |
| 6/25/2011 | Sterling (…3826) | $34,610.68 | FA4U (002236004389) |
| 6/29/2011 | Sterling (…3826) | $25,580.56 | FA4U (002236004389) |
| 7/05/2011 | Sterling (…3826) | $24,828.28 | FA4U (002236004389) |
| 7/12/2011 | Sterling (…3826) | $16,965.76 | FA4U (002236004389) |
| 7/17/2011 | Sterling (…3826) | $23,572.72 | FA4U (002236004389) |
| 7/23/2011 | Sterling (…3826) | $51,662.14 | FA4U (002236004389) |
| 7/27/2011 | Sterling (…3826) | $59,957.08 | FA4U (002236004389) |
| 8/13/2011 | Sterling (…3826) | $49,365.92 | FA4U (002236004389) |
| 8/18/2011 | Sterling (…3826) | $21,358.69 | FA4U (002236004389) |
| 8/23/2011 | Sterling (…3826) | $49,487.30 | FA4U (002236004389) |
| 8/26/2011 | Sterling (…3826) | $28,706.34 | FA4U (002236004389) |
| 9/16/2011 | Sterling (…3826) | $29,253.44 | FA4U (002236004389) |
| 9/17/2011 | Sterling (…3826) | $55,753.44 | FA4U (002236004389) |

| 9/21/2011 | Sterling (…3826) | $52,918.52 | FA4U (002236004389) |
|---|---|---|---|
| 10/04/2011 | Sterling (…3826) | $53,848.28 | FA4U (002236004389) |
| 10/08/2011 | Sterling (…3826) | $33,247.48 | FA4U (002236004389) |
| 10/09/2011 | Sterling (…3826) | $33,247.48 | FA4U (002236004389) |
| 10/14/2011 | Sterling (…3826) | $27,855.53 | FA4U (002236004389) |
| 10/22/2011 | Sterling (…3826) | $47,986.67 | FA4U (002236004389) |
| 11/09/2011 | Sterling (…3826) | $49,383.44 | FA4U (002236004389) |
| 12/04/2011 | Sterling (…3826) | $34,390.00 | FA4U (002236004389) |
| 12/07/2011 | Sterling (…3826) | $14,675.32 | FA4U (002236004389) |
| 1/13/2012 | Sterling (…3826) | $54,093.60 | FA4U (002236004389) |
| 1/25/2012 | Sterling (…3826) | $51,836.00 | FA4U (002236004389) |
| 2/15/2012 | Sterling (…3826) | $28,957.44 | FA4U (002236004389) |
| 2/17/2012 | Sterling (…3826) | $29,299.00 | FA4U (002236004389) |
| 2/26/2012 | Sterling (…3826) | $59,618.60 | FA4U (002236004389) |
| 3/15/2012 | Sterling (…3826) | $25,178.63 | FA4U (002236004389) |
| 3/17/2012 | Sterling (…3826) | $24,835.12 | FA4U (002236004389) |
| 3/23/2012 | Sterling (…3826) | $57,217.03 | FA4U (002236004389) |
| 4/01/2012 | Sterling (…3826) | $26,036.12 | FA4U (002236004389) |
| 4/14/2012 | Sterling (…3826) | $56,380.66 | FA4U (002236004389) |
| 4/24/2012 | Sterling (…3826) | $70,589.52 | FA4U (002236004389) |
| 5/20/2012 | Sterling (…3826) | $39,112.49 | FA4U (002236004389) |
| 5/26/2012 | Sterling (…3826) | $59,075.59 | FA4U (002236004389) |
| 6/06/2012 | Sterling (…3826) | $53,944.16 | FA4U (002236004389) |
| 6/22/2012 | Sterling (…3826) | $38,987.48 | FA4U (002236004389) |
| 6/29/2012 | Sterling (…3826) | $51,227.12 | FA4U (002236004389) |
| 7/11/2012 | Sterling (…3826) | $51,829.64 | FA4U (002236004389) |
| 7/28/2012 | Sterling (…3826) | $56,491.58 | FA4U (002236004389) |
| 8/10/2012 | Sterling (…3826) | $27,796.46 | FA4U (002236004389) |
| 8/12/2012 | Sterling (…3826) | $22,577.08 | FA4U (002236004389) |
| 8/15/2012 | Sterling (…3826) | $19,670.08 | FA4U (002236004389) |
| 9/07/2012 | Sterling (…3826) | $70,509.88 | FA4U (002236004389) |
| 9/08/2012 | Sterling (…3826) | $29,424.70 | FA4U (002236004389) |
| 9/13/2012 | Sterling (…3826) | $69,065.50 | FA4U (002236004389) |
| 9/29/2012 | Sterling (…3826) | $38,104.66 | FA4U (002236004389) |
| 10/06/2012 | Sterling (…3826) | $19,982.20 | FA4U (002236004389) |
| 10/14/2012 | Sterling (…3826) | $52,781.66 | FA4U (002236004389) |
| 10/20/2012 | Sterling (…3826) | $66,753.96 | FA4U (002236004389) |
| 10/27/2012 | Sterling (…3826) | $50,246.56 | FA4U (002236004389) |
| 11/07/2012 | Sterling (…3826) | $44,529.85 | FA4U (002236004389) |
| 11/14/2012 | Sterling (…3826) | $40,533.80 | FA4U (002236004389) |
| 11/28/2012 | Sterling (…3826) | $58,172.76 | FA4U (002236004389) |
| 12/10/2012 | Sterling (…3826) | $76,193.20 | FA4U (002236004389) |
| 1/24/2013 | Sterling (…3826) | $73,440.72 | FA4U (002236004389) |
| 1/31/2013 | Sterling (…3826) | $60,638.27 | FA4U (002236004389) |
| 2/13/2013 | Sterling (…3826) | $70,272.93 | FA4U (002236004389) |
| 3/6/2013 | Sterling (…3826) | $64,985.00 | FA4U (002236004389) |
| 3/17/2013 | Sterling (…3826) | $59,985.00 | FA4U (002236004389) |
| 3/23/2013 | Sterling (…3826) | $52,016.50 | FA4U (002236004389) |

| 4/10/2013 | Sterling (…3826) | $74,257.88 | FA4U (002236004389) |
|-----------|------------------|------------|---------------------|
| 4/22/2013 | Sterling (…3826) | $52,267.34 | FA4U (002236004389) |
| 5/7/2013 | Sterling (…3826) | $70,107.00 | FA4U (002236004389) |
| 5/22/2013 | Sterling (…3826) | $60,353.35 | FA4U (002236004389) |
| 6/2/2013 | Sterling (…3826) | $66,469.25 | FA4U (002236004389) |
| 6/12/2013 | Sterling (…3826) | $66,781.45 | FA4U (002236004389) |
| 6/27/2013 | Sterling (…3826) | $73,579.15 | FA4U (002236004389) |
| 7/10/2013 | Sterling (…3826) | $60,888.00 | FA4U (002236004389) |
| 7/26/2013 | Sterling (…3826) | $66,542.40 | FA4U (002236004389) |
| 8/10/2013 | Sterling (…3826) | $80,775.19 | FA4U (002236004389) |
| 9/3/2013 | Sterling (…3826) | $72,162.60 | FA4U (002236004389) |
| 9/18/2013 | Sterling (…3826) | $72,367.80 | FA4U (002236004389) |
| 9/30/2013 | Sterling (…3826) | $59,132.20 | FA4U (002236004389) |
| 10/17/2013 | Sterling (…3826) | $69,703.00 | FA4U (002236004389) |
| 11/12/2013 | Sterling (…3826) | $58,777.80 | FA4U (002236004389) |
| 12/02/2013 | Sterling (…3826) | $37,468.40 | FA4U (002236004389) |
| 12/04/2013 | Sterling (…3826) | $66,196.00 | FA4U (002236004389) |
| 12/10/2013 | Sterling (…3826) | $82,146.40 | FA4U (002236004389) |
| 1/24/2014 | Sterling (…3826) | $40,883.60 | FA4U (002236004389) |
| 3/25/2014 | Sterling (…3826) | $82,150.40 | FA4U (002236004389) |
| 3/26/2014 | Sterling (…3826) | $71,160.40 | FA4U (002236004389) |
| 3/27/2014 | Sterling (…3826) | $77,127.60 | FA4U (002236004389) |
| 3/31/2014 | Sterling (…3826) | $69,757.20 | FA4U (002236004389) |
| 4/1/2014 | Sterling (…3826) | $70,249.20 | FA4U (002236004389) |
| 5/20/2014 | Sterling (…3826) | $66,952.00 | FA4U (002236004389) |
| 5/22/2014 | Sterling (…3826) | $53,276.12 | FA4U (002236004389) |
| 6/11/2014 | Sterling (…3826) | $71,600.52 | FA4U (002236004389) |
| 6/17/2014 | Sterling (…3826) | $80,380.32 | FA4U (002236004389) |
| 7/07/2014 | Sterling (…3826) | $73,308.72 | FA4U (002236004389) |
| 7/17/2014 | Sterling (…3826) | $88,745.48 | FA4U (002236004389) |
|  |  | **$6,355,599.89** |  |

USFWS agents and inspectors intercepted and covertly inspected five of Sterling's shipments from its FA4U factory in the Philippines. Upon inspection, these intercepted shipments were found to contain imitation Native American-style jewelry consistent with what agents have observed for sale and purchased as purported genuine Native American jewelry at retail stores across New Mexico. And although the invoices confirm that the imitation Native American-style jewelry was manufactured in the Philippines, none of the jewelry was indelibly marked with its country of origin as required by law. In fact, all of the imported jewelry inspected by USFWS, which was indelibly stamped with various initials and Native American symbols, was placed inside plastic bags outfitted with "Handmade in Philippines" decals. The jewelry could be easily separated from the plastic bags and it would be impossible for an unsuspecting consumer to determine the jewelry's country of origin.

For example, USFWS Wildlife Inspectors (WI) stationed at the port of Louisville, KY, inspected Sterling shipments imported from FA4U on May 29, 2012, and July 30, 2012.  During these inspections, the WIs photographed items contained in the shipments for my review.  In these cases, I noted that the jewelry appeared to be Native American-style.  The pieces of jewelry were engraved with symbols or initials and placed in individual bags, and the bags that contained the individually-packaged jewelry were affixed with "Handmade in Philippines" decals.  None of the items in the shipment was indelibly marked with country-of-origin information as required by 19 U.S.C. § 1304.  And the importer of record for the shipments was listed in import declarations as Sterling/ Sheda Khalaf and the exporter of record was listed as FA4U.

## Destination for all FA4U jewelry imported by Sterling

My review of the documentation for each of the approximately 300 shipments Sterling imported from FA4U, reveals a single destination location:  Sterling's registered business location at 5815 Menaul Blvd., Albuquerque, NM 87110.  In many cases, the imports were signed as received upon delivery by Sheda Khalaf herself.  Trash recovery operations conducted outside Sterling recovered some of the FA4U shipping boxes, invoices and other shipping documentation, confirming that the FA4U imports were sent directly to Sterling. Based on the five inspected shipments from FA4U to Sterling, I was able to note and match the distinct FA4U boxes, which are wrapped entirely in duct tape, and the FA4U plastic packaging for its jewelry.  The plastic packing is distinctly crisp, clear and is affixed with "Handmade in Philippines" decals.  Additionally, each piece of jewelry is placed inside a smaller plastic bag, which is then aggregated in a larger plastic bag with other individually bagged pieces of jewelry.

Sterling's latest import from FA4U was declared on October 16, 2015.  The import was declared as containing 3,055 pieces of jewelry at a declared value of $49,192.  As of October 21, 2015, Sterling continues to operate its business at 5815 Menaul Blvd., Albuquerque, NM 87110.

## Distribution point for all FA4U jewelry imported by Sterling

As mentioned above,  my investigation has revealed a coalition of businesses and individuals associated with Sterling.  Based on follow-up investigations of those businesses and individuals associated with Sterling, I know that Sterling's location at 5815 Menaul Blvd., Albuquerque, NM 87110, serves as the United States hub for the distribution of Sterling imported Native American-style jewelry to wholesalers and retailers alike. Electronic communications between Sterling and other members of the Sterling Coalition, as well as surveillance of Sterling's business location, demonstrates that retailers and wholesalers pick-up imported jewelry directly from Sterling.  For example, my examination of emails revealed arrangements for Asad Shawar (a travelling retailer and buyer for Bullion Jewelers in Breckenridge, CO), to pick-up an order of imported jewelry directly from Sterling.   Similarly, surveillance has revealed several known Native American-style jewelry wholesalers at Sterling's location with vans used to transport merchandise.

*Examples of How Sterling's Imported Jewelry is Sold in Violation of 18 U.S.C. § 1159*

My financial investigation established direct links between Sterling and over ten retail stores that sell Sterling's Filipino-made jewelry as genuine Native American-made jewelry. For example, financial records reveal significant and regular payments to Sterling from Bullion Jewelers, located in Breckenridge, Colorado. I travelled to Buillon Jewelers, at 121 South Main St. in Breckenridge, CO, and observed and covertly recorded Taha Shawar (the owner of Bullion Jeweler's) display for sale and sell Sterling-imported jewelry as Native American-made.

Email communications and invoices confirm the relationship between Taha Shawar and Nader Khalaf of Sterling. One such invoice dated May 31, 2010, from Sterling to Bullion, details one thousand two hundred and fifty-four (1,254) pieces of jewelry for a total of $49,548.08. The invoice is titled, "Fashion Accessories 4 U," and contains the corresponding Philippine address, telephone number and other business information. Additionally, the invoice contains a statement which reads, "The goods are wholly the manufacture of Philippines and are different articles of commerce that have been manufactured in Philippines." The email exchanges between Bullion and Sterling and then Sterling and FA4U illustrate how retailers request particular items to be produced at Sterling's factory and even the specific initials to be stamped on those items. For example, the email thread below memorialized Shawar's request that Sterling's FA4U factory stamp the requested jewelry with the initials, "E.Y."

> [**From** Shawar **To** Sterling on July 23, 2013]
> "Nader please make sure they stamp the item with letters E.Y.
> Thanks very much
> Best Regards
> Taha"

> [**From** Sterling **To** FA4U]
> "Ok, please make but be sure to make initials E.Y. Not urgent, just send
> with the next shipment. Thank You!"

> [**From** FA4U **to** Sterling ]
> "Noted sir, How many the qty & the colors?"

15

Sterling also sent images attached to emails to Taha Shawar from which he could select for replication at FA4U. The images appear to be from Lazuli Designs, a Gallup-based manufacturer that employs several Native American artists, including Edison Yazzie.

On August 5, 2014, I visited Bullion in a covert capacity and determined that Shawar was selling the "E.Y."-stamped, Filipino jewelry as genuine Native American jewelry, made by "Edison Yazzie." When an assisting agent asked about a butterfly necklace with the letters, "E.Y.," stamped on the back, Shawar responded that they stand for, "Edison Yazzie." The butterfly necklace matched one of the images sent by Sterling for Shawar's selection. Shawar also misrepresented numerous other pieces of jewelry I knew to be consistent with Sterling's imports, including representing Sterling's raincloud-stamped rings as Zuni made.



Bullion Purchase

Lastly, I observed several pueblo scene bracelets which were consistent with Sterling imports, in that their inlay, and stamps and initials on the inside, were in the exact same location and manner as the Sterling items.



Sterling Import

Bullion Purchase

Shawar told me that the bracelets were Zuni made. I purchased the bracelet and later confirmed its origin as Sterling-imported by comparing it to photographs taken during inspections of intercepted Sterling shipments. Additionally, the following sections of this affidavit, outline how each of the members of the Sterling Coalition are financially linked to Sterling and the fraudulent sale of Sterling-imported jewelry as real Native American-made jewelry.

*Most Recent Activity*

Sterling has continued to import shipments of jewelry from its FA4U factory in the Philippines on a regular basis. The last shipment declared was on October 16, 2015, destined for delivery at Sterling's business location on Menaul St. in Albuquerque, N.M. Members of the Sterling Coalition have continued to use Sterling's location as a distribution point. On September 12, 2015, Mohammad Manasra, whose activities are detailed below as Target 5, was observed backing-up one of the vans he uses to transport jewelry to the front doors of Sterling in a manner consistent with loading merchandise. Afterwards, a trash recovery operation at Sterling revealed packaging consistent with Sterling's imports.

Based on the facts related within this affidavit, my training and experience, and the training and experience of agents and investigators involved in this investigation, there is probable cause to believe that the items to be seized as described in Attachment B, which is attached hereto and fully incorporated herein, will be located at the premises described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 542 (importation by false or fraudulent practice), 19 U.S.C. § 1304 (failure to mark goods with country of origin), 18 U.S.C. § 1159 (violation of the Indian Arts and Crafts Act), and 18 U.S.C. § 371 (conspiracy).

**2.  Business Name:**            Al Zuni

    **Owner Name:**            Nashat Khalaf

    **Search Location:**        1603 West Hwy 66, Gallup, NM 87301

    **Organizational Role:**    Wholesaler/Retailer

*Financial Link to Sterling*

An examination of Sterling's financial records revealed $1,367,461 in payments from Al Zuni to Sterling from July 16, 2010 to July 15, 2014.  The payments were made from Al Zuni to the Sterling account with Bank of America (Acct. # 435017473826).

| Date | Sender / Memo | Amount | Payee |
|---|---|---|---|
| 7/16/2010 | Al Zuni / Jewelry | $16,500.00 | Sterling Islands |
| 8/16/2010 | Al Zuni Global / Jewelry | $17,000.00 | Sterling Islands |
| 2/11/2011 | Al Zuni Global | $23,834.00 | Sterling Islands |
| 2/22/2011 | Al Zuni Global / Credit Cards | $48,500.00 | Sterling Islands |
| 3/18/2011 | Al Zuni Global / Jewelry | $46,124.00 | Sterling Islands |
| 7/11/2011 | Al Zuni Global | $3,860.00 | Sterling Islands |
| 8/5/2011 | Al Zuni Global | $1,500.00 | Sterling Islands |
| 8/19/2011 | Al Zuni Global | $63,622.00 | Sterling Islands |
| 9/20/2011 | Al Zuni Global | $63,622.00 | Sterling Islands |
| 10/20/2011 | Al Zuni Global | $63,622.00 | Sterling Islands |
| 1/6/2012 | Al Zuni Global | $52,000.00 | Sterling Islands |
| 2/22/2012 | Al Zuni Global | $96,177.00 | Sterling Islands |
| 3/19/2012 | Al Zuni Global | $96,177.00 | Sterling Islands |
| 4/16/2012 | Al Zuni Global | $18,000.00 | Sterling Islands |
| 5/25/2012 | Al Zuni Global | $44,333.00 | Sterling Islands |
| 7/25/2012 | Al Zuni Global | $44,333.00 | Sterling Islands |
| 8/10/2012 | Al Zuni Global | $81,547.00 | Sterling Islands |
| 9/10/2012 | Al Zuni Global | $81,547.00 | Sterling Islands |
| 10/10/2012 | Al Zuni Global | $81,547.00 | Sterling Islands |
| 12/24/2012 | Al Zuni Global / Jewelry Chain #1468 | $2,765.00 | Sterling Islands |
| 1/22/2013 | Al Zuni Global | $32,332.00 | Sterling Islands |
| 1/29/2013 | Al Zuni Global | $4,530.00 | Sterling Islands |
| 2/19/2013 | Al Zuni Global | $32,332.00 | Sterling Islands |
| 2/19/2013 | Al Zuni Global | $47,500.00 | Sterling Islands |
| 2/25/2013 | Al Zuni Global | $47,500.00 | Sterling Islands |
| 4/8/2013 | Al Zuni Global | $5,330.00 | Sterling Islands |
| 6/7/2013 | Al Zuni Global | $3,736.00 | Sterling Islands |
| 8/2/2013 | Al Zuni Global | $30,685.00 | Sterling Islands |
| 9/16/2013 | Al Zuni Global | $23,692.00 | Sterling Islands |
| 6/16/2014 | Al Zuni Global | $96,607.00 | Sterling Islands |

| 7/15/2014 | Al Zuni Global | $96,607.00 | Sterling Islands |
|-----------|----------------|------------|------------------|

On August 23, 2015, I observed Nashat Khalaf at Sterling. I observed Khalaf exit the business through the front door, enter his vehicle, a Mercedes SUV, and leave the location. A registration query of the vehicle revealed that the Mercedes SUV is registered to Al Zuni Global Jewelry.

On September 22, 2015, I again observed Nashat Khalaf, at Sterling. Specifically, I observed Khalaf engaging in behavior consistent with loading the Mercedes cargo van that he was driving. I observed him close the rear cargo doors (the vehicle was backed up to the front door of Sterling), get into the driver's seat of the van, and depart the business. A registration query revealed that the Mercedes cargo van I saw Khalaf driving is registered to the business Al Zuni Global Jewelry Inc.

### Covert Purchases

On November 13, 2014, I visited Al Zuni in a covert manner. A male employee introduced himself to me as "Zaher," and assisted me throughout the contact. I later identified the subject as Zaher Mostafa, the manager of Al Zuni. While in the store, I observed a collection of silver and onyx rings which I recognized as being similar to rings imported by Sterling on July 30, 2012. I recalled that the contents of that shipment, and specifically the same style ring, were photographed and documented during the



Sample / Replica

inspection. In the imported shipment, eighty (80) of the same style rings were bagged together. One of these



Inspection Photograph

rings was labeled, "AL-Zuni sample." The "AL-Zuni sample," ring was marked with a stamp on the inside which differed from rest of the items. The other rings were marked with, "OY," initials. The bag appeared to contain one original sample and a series of replicas made from that sample. I looked at the rings in the store and observed that the markings appeared to be the same as the, "AL-Zuni sample," from the Sterling import. Mostafa told me that the rings were made by the silversmith, Ray Jack.

I then asked Mostafa if they had any small silver canteens in the store. I referred to them as, "Navajo canteens," as I knew this to be the industry term for them. I had seen these items in the Sterling shipment that I inspected on September 10, 2012. During that inspection, I also noted that there appeared to be an original "sample" canteen bagged with twenty exact replicas. Mostafa told me that they did have some in the store and showed them to me. I observed that the canteens were consistent with those imported by Sterling.



Al Zuni item

On November 24, 2014, an assisting USFWS SA and I conducted a covert contact and purchase of evidence at Al Zuni. Mostafa recognized me from our previous interaction and assisted us throughout the contact. Mostafa advised us regarding the system of buying at Al Zuni. Specifically, Mostafa said, "I carry all kind of jewelry. Navajo, Zuni, overseas..." Mostafa said that we could tell him what we were interested in and he could point us in the right direction. I also observed that Nash Khalaf was present at the store. New Mexico's Secretary of State records, as well as financial records, confirm that Nash Khalaf is the owner of Al Zuni. Nash Khalaf spoke to the SAs about the jewelry in the store saying, "all this jewelry done by individual...just by eyes and by hand." I believe Nash Khalaf was referring to a specific tray of jewelry in the store, not the entire store.

I selected four of the canteens that I had observed during the previous contact on November 13, 2014. I noted that there were several more canteens in separate boxes available and offered for sale. I also selected several other pieces of jewelry which I knew to be consistent with Sterling imported items.

Upon checking out, Mostafa went through the items that we selected for a possible purchase. I asked about the canteens and Mostafa explained that, "they're made here locally ... Navajo, yes ... That's a Navajo canteen..." Mostafa then informed us that the rest of the jewelry we selected for purchase, aside from some "Effie Calavaza" style jewelry,[1] was imported. Mostafa, once again, pointed out that the canteens were Navajo. I remarked that the imported jewelry was so nice that it could be sold as Zuni made. Mostafa simply replied, "mm-hmm." But then Mostafa clarified, "*I* have to tell you." Even so, Mostafa sold the "Navajo canteens," as Navajo-made, alongside the other items, for $1077. The four canteens alone cost $340.

---

1 Effie Calavaza is a Zuni artist who has been producing Native American jewelry for over 60 years. Her jewelry is distinct in that it incorporates snakes into the design of every piece. Recently, however, a related investigation has revealed that many "Effie Calavaza" style jewelry pieces on the market in New Mexico are not actually made by Effie Calavaza though they are sold as genuine.

I compared the four canteens to photographs taken during the September 10, 2012, Sterling inspection and determined that the purchased canteens matched the canteen designs documented during the Sterling-import inspection. The purchased canteens also correspond to those depicted in an August 3, 2012 email communication between Nader Khalaf of Sterling and FA4U. The email references an order placed by Zaher and contains an attached photograph which depicts three



Comparison

canteens (which match those in the inspected, September 10, 2012, shipment) and a plastic bag with the note, "Nader Can uncle Joe make These in Silver I need 20 [each] Zaher." Furthermore, the canteens purchased at Al Zuni during the covert contact match the design on the canteens depicted in this email.

### Recent Activity

On October 16, 2015, an assisting federal agent visited Al Zuni in a covert manner. The agent observed both Zaher Mostafa and Nash Khalaf working at the business. Additionally, the agent observed items displayed for sale which were consistent with Sterling imports. Specifically, the agent observed a box of small canteens offered for sale which were consistent with those replicated and imported by Sterling.



### Conclusion

Based on the facts related within this affidavit, my training and experience, and the training and experience of agents and investigators involved in this investigation, there is probable cause to believe that the items to be seized as described in Attachment B, which is attached hereto and fully incorporated herein, will be located at the premises described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 542 (importation by false or fraudulent practice), 19 U.S.C. § 1304 (failure to mark goods with country of origin), 18 U.S.C. § 1159 (violation of the Indian Arts and Crafts Act), and 18 U.S.C. § 371 (conspiracy).

**3. Business Name:**      Gallery 8

    **Owner Name:**      Nael Ali

    **Search Location:**      1919 Old Town Rd. NW #8, Albuquerque, NM 87104

    **Organizational Role:**      Retailer

**4. Business Name:**      Galleria Azul

    **Owner Name:**      Nael Ali

    **Search Location:**      326A San Felipe St., Albuquerque, NM 87104

    **Organizational Role:**      Retailer

Gallery 8 and Galleria Azul are both located in Old Town Albuquerque. According to the New Mexico Secretary of State database, Nael Ali is listed as the President of both Gallery 8 Inc. and Galleria Azul Inc. Additionally, he is the signatory on the business accounts related to Gallery 8 and Galleria Azul.

***Financial Ties to Sterling***

An examination of financial records revealed approximately $58,000 in payments to Sterling from Nael Ali, d.b.a. Gallery 8 or Galleria Azul. The payments were made by checks signed by Nael Ali and drawn on Gallery 8 or Galleria Azul accounts with Bank of Albuquerque (Acct. # 8092233979 and 8093377451, respectively). As Sterling is in the business of importing and subsequently selling their Filipino made Native American-style jewelry and Ali's stores sell Sterling imported jewelry, it can be presumed that these payments were made for jewelry imported from FA4U.

| Date | Check Signer / Notes | Amount | Payee |
|------|----------------------|--------|-------|
| 3/18/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 4/7/2011 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 4/15/2011 | Nael Ali (…3979) | $2,300 | Sterling (435017473826) |
| 4/29/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 5/7/2011 | Nael Ali (…3979) | $2,507 | Sterling (435017473826) |
| 5/15/2011 | Nael Ali (…3979) | $2,300 | Sterling (435017473826) |
| 6/15/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 7/15/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 8/1/2011 | Nael Ali (…3979) | $1,825 | Sterling (435017473826) |
| 11/18/2011 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/18/2011 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/25/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 12/2/2011 | Nael Ali (…3979) | $416 | Sterling (435017473826) |
| 12/2/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 12/10/2011 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |

| 12/16/2011 | Nael Ali (…3979) | $555 | Sterling (435017473826) |
|---|---|---|---|
| 1/8/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 1/10/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 2/8/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 3/10/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 4/29/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 7/5/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 7/18/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 7/29/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 8/08/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 8/18/2012 | Nael Ali (…3979) | $800 | Sterling (435017473826) |
| 8/28/2012 | Nael Ali (…3979) | $500 | Sterling (435017473826) |
| 11/3/2012 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 11/4/2012 | Nael Ali (…3979) | $1,571 | Sterling (435017473826) |
| 12/5/2012 | Nael Ali (…3979) | $2,000 | Sterling (435017473826) |
| 12/5/2012 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 7/25/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 7/28/2013 | Nael Ali (…3979) | $1,250 | Sterling (435017473826) |
| 8/16/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 8/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 9/18/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 9/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 10/15/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 10/18/2013 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 11/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 11/15/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 11/15/2013 | Nael Ali (…7451) | $1,500 | Sterling (435017473826) |
| 11/20/2013 | Nael Ali (…3979) | $1,500 | Sterling (435017473826) |
| 1/20/2013 | Nael Ali (…7451) | $1,500 | Sterling (435017473826) |
| 10/7/2014 | Nael Ali (…7451) | $690 | Sterling (435017473826) |
| 10/8/2014 | Nael Ali (…3979) | $1,000 | Sterling (435017473826) |
| 10/18/2014 | Nael Ali (…7451) | $1,000 | Sterling (435017473826) |
| | | **$56,964** | |

## Covert Purchases

During one of the previously mentioned covert inspections, which took place on September 10, 2012 (UPS air waybill **H896-7699-001**), I took note of a package of fifty-two (52) rings (Item # RNG-1325-MAN). All of the rings were similar in design, but twenty (20) of the rings were the same in that they were made in the "cornrow" style, used brown and black stones, and bore the initials, "CK," on the inside.



Sterling Import

I separated out these twenty (20) rings and applied ultraviolet visible ink to one side of each ring.



Ultraviolet ink visible under exposure to black light

I then confirmed that the ink was visible using an ultraviolet light source after applying the ink. Finally, I repacked the items and sealed the boxes.

On September 12, 2012, I conducted a surveillance of Sterling at 5815 Menaul Blvd. in Albuquerque, NM and at 10:06 AM, "KHALAF" signed for five UPS shipments including H896-7699-001.

On November 26, 2012, I observed several pieces of Native American-style jewelry offered for sale in the store, Gallery 8, located at 1919 Old Town Road, NW #8, Albuquerque, NM, which were consistent with those that were imported by Sterling. None of the jewelry in the store, that was consistent with the Sterling imports, was marked to notify the customer that it was made in the Philippines. The store employee told me that everything in the store was Indian (Native American) made except the amber jewelry. I observed two rings

which were identical to the rings I had covertly marked in the September 10, 2012, Sterling shipment (UPS #H896-7699-001, invoice item number RING-1325). I asked to look at the rings and observed that they were inscribed with the initials, "CK," just as the Sterling rings had been.

I was told that the rings were Navajo made. The employee told me that the manager would call me with the name of the "CK" artist. I was then told that the owner of Gallery 8 also owns another gallery, Galleria Azul, which was located just a few blocks away. I purchased the two rings and other jewelry consistent with Sterling importations via credit card from Gallery 8 for a total of $689.08. After purchasing the items, I confirmed that the rings were, in fact, rings from the September 10, 2012, Sterling shipment (UPS #H896-7699-001) by exposing them to ultraviolet light and confirming the presence of ultraviolet visible ink.

On November 30, 2012, I again visited Gallery 8 in a covert manner. The manager was present at the store. I told the manager, that I had purchased two rings a few days prior and wanted to know the artist's identity. The manager told me that she had to get into the owner's (Nael Ali), computer to get the artist's name. Independent research confirmed that Ali is the owner of Gallery 8 and Galleria Azul in both Albuquerque and Scottsdale, AZ.

After leaving Gallery 8 on November 30, 2012, I visited Galleria Azul in a covert manner. I observed many of the same items that I had seen in Gallery 8, in Galleria Azul. I also saw another ring, identical to those I had marked in the Sterling shipment, for sale. The store employee explained that Galleria Azul had mostly the same items as were in Gallery 8. I asked about a turquoise ring which looked consistent to rings imported by Sterling on July 30, 2012.



Galleria Azul rings consistent with Sterling Import

Galleria Azul ring - "OY" Initials same as Sterling Import





Photograph taken during Sterling shipment inspection in Louisville, KY

Photograph taken during Sterling shipment inspection in Louisville, KY

"OY" initials same as Galleria Azul ring

The employee told me that the ring was made using "Cerillos" turquoise and that it was Navajo made. I observed that the ring was inscribed with the initials "OY" just as the Sterling rings were. The employee told me that the galleries (Gallery 8 and Galleria Azul) are owned by the same person and they interchange items and stock. I purchased the ring for a total of $96.30.

On February 26, 2014, I visited Gallery 8 and Galleria Azul in a covert manner. I spoke to the manager while at Gallery 8. The manager remembered me and told me to pick out the items I was interested in and then she would call Ali and, "take care of it." I referenced a ring I was wearing (one of the marked rings which I purchased previously) and asked if they had any more in stock. The manager said that she only had a similar type in stock, but not the same one. I asked if Gallery 8 could contact the artist to get more produced. The manager said they could contact the artist, "Calvin Kee," and see if that would be possible. I was again told that all of the jewelry in the store was Navajo-made with the exception of three pieces which were Zuni made. The manager then said she would call Ali to determine final pricing on the jewelry. The manager also said she would have Ali contact "Calvin Kee" to see about getting more jewelry. The manager said that "Calvin Kee" exclusively supplies Gallery 8 with his jewelry. I then walked over to Galleria Azul. While in the store, I observed jewelry, pottery, and paintings for sale. The jewelry was consistent with that which is imported by Sterling. I was told that all of the jewelry was Navajo made. Another USFWS SA then asked for a list of artists and the corresponding initials. The store employee told me that she had a list and could make a copy.

Additionally, the employee made the following statements regarding the jewelry and the artists' names and initials:

- o "Sometimes I forget and make stuff up. I know that's bad."
- o "We make it up. I'm not gonna lie ... You guys are in the business, you have to

understand." (**Agent's Note**: This statement was made in response to the SA's question about what they do when artists have the same initials.)

o   "It is all handmade . . . I'm not lying about that . . ."

o   "It's all locally made."

I then returned to Gallery 8 and the manager told me that they have a third shop, called Galleria Azul, in Scottsdale, Arizona. The manager told me that she spoke to Ali and she would take a photograph of my "Calvin Kee" ring and get more made. The manager called Ali using the wireless telephone in the store. After getting off the telephone, the manager told me that Ali said they would get in touch with the artist, "Calvin Kee." At that time, the manager told me Calvin Kee was born in 1964. I asked for a key to the symbols on some of the rings. The manager explained that the feather symbol is for the Yazzie family, "AA" corresponds to Juan Armas, the Yucca symbol corresponds to Ardale, and "OY" corresponds to Olivia Yazzie. I recognized all of these symbols and initials as consistent with symbols on jewelry imported by Sterling. The manager then took photographs of my ring, using her cell phone, to show to Ali.

I placed an order for ten copies of the ring that the manager photographed and ten additional "Calvin Kee" rings. I then purchased five rings with "CK" initials, one ring with a Yucca symbol, one ring with "NB" initials, one ring with "OY" initials, three rings with raincloud symbols, and one ring with a feather symbol for $1116. The manager said that it would take at least three weeks for the ordered rings to be produced.

On April 2, 2014, a USFWS SA contacted the manager at Gallery 8 via telephone. The SA inquired about the status of the rings that were ordered on February 26, 2014. The manager told the SA that the rings were still being produced. Additionally, the manager said that she did not want to rush the artist because the SAs desire a high quality product.

Open source research did not reveal any Navajo artists named Calvin Kee. I also requested the Department of Interior, Indian Arts and Crafts Board to confirm any known Native American artists with the name, Calvin Kee. Their research returned no results for that name. Finally, the Navajo Nation confirmed that there were no Navajo tribal members, named Calvin Kee and born in 1964, on their rolls.

On May 15, 2014, Sterling imported a shipment of jewelry from FA4U. I reviewed the invoice for that shipment and noted the first item number listed was RING-1325, which was consistent with the item number for the Sterling-imported rings that I had first inspected and marked on September 10, 2012, as well as the rings I had observed and ordered from Gallery 8 on February 26, 2014.

On May 29, 2014, I visited Galleria Azul in Scottsdale, Arizona, in a covert manner. I entered the store and observed Ali working behind the counter in the store. I observed jewelry offered for sale in the store which was consistent with that imported by Sterling. I introduced myself and told Ali that I had placed an order for "Calvin Kee" rings at the Albuquerque store. Ali immediately knew what I was referring to. Ali told me that

27

he had more "Calvin Kee" rings if I wanted them. Ali told me that the order of rings had arrived a week ago and were currently at his Albuquerque store. Ali told me that all of the jewelry in the store is Native made. Ali told me that people in Albuquerque want all Native made items so that is what he carries in his Albuquerque stores, as well. Finally, I purchased a ring from Ali which was consistent with those imported by Sterling. Ali told me that the ring was Navajo made and I purchased the item for a total of $120.

On May 31, 2014, I visited Gallery 8 in Albuquerque, New Mexico, in a covert manner. The manager told me that Ali got in touch with the artist and that "Calvin Kee" did not have a lot of the stones available so he couldn't make them all in brown (the color of the original ring to be copied for the order). The manager told me that "Calvin Kee" made twenty rings in total. The manager told me that the rings retail for $270 but were sold to me for $90 each. The manager told me that she would FedEx the items to New York for me and that this was a normal business practice for the store. I paid a total of $1800 for the rings and $20 for the shipping by credit card transaction. The items were all sold to me in violation of the IACA (18 U.S.C. § 1159).

On June 5, 2014, a USFWS SA stationed in Valley Stream, NY notified me that the Gallery 8 shipment had been delivered, via FedEx. On June 11, 2014, I received a FedEx package from the USFWS SA stationed in Valley Stream, NY. The original FedEx package which was sent from Gallery 8 to New York was unopened. Upon opening the package, I found it to contain twenty rings with the initials "CK" stamped into them.

*Recent Activity*

On October 15, 2015, an assisting federal agent visited Gallery 8 in a covert manner. While in the business, the agent spoke with Ali who said that the jewelry in his store is, "all Navajo...everything you see in my store is Navajo...even the inlay is Navajo." The agent observed jewelry displayed and offered for sale which was consistent with Sterling imports. Specifically, the agent observed a ring with a raincloud symbol stamped into it. Ali told the agent that he had a store in Scottsdale, AZ, until recently. When the agent asked about the Scottsdale store, Ali told the agent that he carried the same merchandise in that store. Ali went on to say that it made things very difficult in Scottsdale because the consumer "had the image that everything is fake, everything is bad." After leaving Gallery 8, the agent visited Galleria Azul in a covert manner as well and, again, observed jewelry displayed and offered for sale which was consistent with Sterling imports. During my review of the video taken during the covert contact, I observed several items offered for sale in Galleria Azul consistent with both Sterling and IJW[2] imports.

*Conclusion*

Based on the facts related within this affidavit, my training and experience, and the training and experience of agents and investigators involved in this investigation, there is probable cause to believe that the

---

2 Based on my investigation, I know that I Jewelers Wholesale d.b.a. Golden Bear ("IJW"), is an importer and retail supplier of Filipino-made, Native American-style jewelry, located in Calistoga, CA. *IJW LIKE STERLING DOES NOT STAMP ITS JEWELRY WITH THE COUNTRY OF ORIGIN.*

items to be seized as described in Attachment B, which is attached hereto and fully incorporated herein, will be located at the premises described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 542 (importation by false or fraudulent practice), 19 U.S.C. § 1304 (failure to mark goods with country of origin), 18 U.S.C. § 1159 (violation of the Indian Arts and Crafts Act), and 18 U.S.C. § 371 (conspiracy).

**5.  Business Name:**      A.N. Jewelry

**Owner Name(s):**     Arafat H. Nimer and Maria Nimer

**Search Location:**      2304 Cagua NE, Albuquerque, NM 87110 (Nimer)

**6.  Business Name:**      Mohammad Manasra (Sole Proprietor)

**Owner Name:**       Mohammad Manasra

**Search Location:**      909 Tumulus Dr. NW in Albuquerque, NM 87120 (Manasra)

**Search Property:**      2011 Chevrolet Express G1500 Cargo Van
                          NM license plate number "NHR850"
                          VIN "1GCSGAFX0B1140402"

**Owner Name:**       Abdel Manasra

**Search Property:**      2005 Dodge Grand Caravan
                          NM license plate number "MLA224"
                          VIN "2D4GP44L55R166343"

                          2002 Mercedes-Benz 500ML
                          NM license plate number "MWH283"
                          VIN "4JGAB75E52A323268"

Open source queries of the A.N. Jewelry Company indicate that it is listed as operating in the "…jewelry, precious stones and precious metals" industry.  Furthermore, the Cagua residence and the A.N. Jewelry Company are both listed as being owned by Arafat Nimer.  A search of any public or retail outlet for the sale of jewelry by A.N. Jewelry or Nimer returned negative results.

***Financial links to Sterling***

An examination of financial records, revealed that Nimer d.b.a. A.N. Jewelry Company has purchased over $15,000 in jewelry from Sterling.

| Date | Check Signer / Memo | Amount | Payee |
|------|---------------------|--------|-------|
| 6/7/2011 | Maria Nimer | $1500 | Sterling Islands |
| 7/11/2011 | Maria Nimer | $1500 | Sterling Islands |
| 7/15/2011 | Maria Nimer | $1000 | Sterling Islands |
| 8/15/2011 | Maria Nimer / Jewelry | $1000 | Sterling Islands |
| 8/31/2011 | Maria Nimer | $1500 | Sterling Islands |
| 9/20/2011 | Maria Nimer | $1000 | Sterling Islands |

| 10/20/2011 | Maria Nimer | $760 | Sterling Islands |
| 11/21/2011 | Maria Nimer | $1,100 | Sterling Islands |
| 12/14/2011 | Maria Nimer | $2000 | Sterling Islands |
| 6/18/2012 | Maria Nimer / Jewelry | $2000 | Sterling Islands |
| 7/8/2012 | Maria Nimer / Jewelry | $1500 | Sterling Islands |
| 7/28/2012 | Maria Nimer / Jewelry | $1000 | Sterling Islands |

*Covert Purchases*

On October 19, 2014, I attended the Albuquerque Flea Market located at the intersection of Louisiana Blvd. and Central Ave. I previously obtained information from the observations of another USFWS OLE agent, Resident Agent in Charge Ariel Vazquez, that jewelry similar to the pieces Sterling had imported, was being sold by an unidentified vendor at the market.

While walking through the market booths, SA Noel Wagner and I located a male subject, who identified himself as "...Mohammad". This individual was later identified through associated Department of Motor Vehicle (DMV) registration records and photographs, as Mohammad Manasra. I observed Manasra selling jewelry consistent with the Sterling imported jewelry. Upon closer inspection, I recognized several of the pieces by their overall design, markings, and stamped initials, as consistent with Sterling imported jewelry.

Manasra had several cases, filled with Native American-style jewelry, displayed at his booth. Additionally, a white cargo van bearing New Mexico license plate 688NPT was parked immediately behind the area where the jewelry was being displayed. This van, hereinafter referred to as "Original Market Van," was subsequently identified as belonging, and registered to Manasra. The registration information for the Original Market Van revealed an associated address of: 2304 Cagua Drive Northeast, Albuquerque, New Mexico. This address is listed on law enforcement databases as an older associated property of Manasra. Most importantly, this address is the same registered address as the official business address of the "A.N. Jewelry."

I contacted Manasra in a covert manner and began to speak with him about his jewelry and the respective prices. Manasra stated that he supplies jewelry in a "...wholesale fashion", to locations outside of New Mexico.

Later review of financial records revealed that Manasra and the subject, Abdel A. Manassra (believed to be Mohammad's brother), have both sold jewelry to Gallery 8 (NM), Galleria Azul (NM) and Galleria Azul (AZ). (It should be noted that Gallery 8 and Galleria Azul have purchased jewelry directly from Sterling and also from the Mohammad Manasra and Abdel Manassra.) All of the checks listed below were written from one of the Gallery 8 or Galleria Azul accounts to Mohammad Manasra or Abdel Manasra.

31

| Date | Check Signer / Memo | Amount | Payee |
|------|---------------------|--------|-------|
| 11/11/2013 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 12/12/2013 | Nael Ali / Galleria Azul (AZ) | $1543 | Mohammad Manasra |
| 3/4/2014 | Nael Ali / Galleria Azul (AZ) | $1122 | Mohammad Manasra |
| 3/22/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 4/15/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 5/4/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 5/16/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Mohammad Manasra |
| 3/7/2011 | Nael Ali / Galleria Azul (NM) | $2000 | Mohammad Manasra |
| 7/14/2011 | Nael Ali / Galleria Azul (NM) | $564 | Mohammad Manasra |
| 8/18/2011 | Nael Ali / Galleria Azul (NM) | $300 | Mohammad Manasra |
| 9/7/2011 | Nael Ali / Galleria Azul (NM) | $100 | Mohammad Manasra |
| 9/22/2011 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 10/5/2011 | Nael Ali / Galleria Azul (NM) | $800 | Mohammad Manasra |
| 11/5/2011 | Nael Ali / Galleria Azul (NM) | $1008 | Mohammad Manasra |
| 11/26/2011 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 12/10/2011 | Nael Ali / Galleria Azul (NM) | $450 | Mohammad Manasra |
| 5/30/2012 | Nael Ali / Galleria Azul (NM) | $400 | Mohammad Manasra |
| 6/26/2012 | Nael Ali / Galleria Azul (NM) | $420 | Mohammad Manasra |
| 10/3/2012 | Nael Ali / Galleria Azul (NM) | $800 | Mohammad Manasra |
| 11/13/2012 | Nael Ali / Galleria Azul (NM) | $461 | Mohammad Manasra |
| 12/10/2012 | Nael Ali / Galleria Azul (NM) | $750 | Mohammad Manasra |
| 4/20/2013 | Nael Ali / Galleria Azul (NM) | $400 | Mohammad Manasra |
| 5/25/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |

| 6/11/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 6/21/2013 | Nael Ali / Galleria Azul (NM) | $300 | Mohammad Manasra |
| 6/25/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 8/20/2013 | Nael Ali / Galleria Azul (NM) | $550 | Mohammad Manasra |
| 10/8/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 10/9/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 10/23/2013 | Nael Ali / Galleria Azul (NM) | $500 | Mohammad Manasra |
| 3/26/2014 | Nael Ali / Galleria Azul (NM) | $1500 | Mohammad Manasra |
| 4/15/2014 | Nael Ali / Galleria Azul (NM) | $750 | Mohammad Manasra |
| 8/20/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 9/18/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Mohammad Manasra |
| 10/6/2014 | Nael Ali / Gallery Azul (NM) | $500 | Mohammad Manasra |
| 1/21/2011 | Nael Ali / Gallery 8 | $1250 | Mohammad Manasra |
| 2/15/2011 | Nael Ali / Gallery 8 | $460 | Mohammad Manasra |
| 2/22/2011 | Nael Ali / Gallery 8 | $624 | Mohammad Manasra |
| 3/22/2011 | Nael Ali / Gallery 8 | $600 | Mohammad Manasra |
| 3/30/2011 | Nael Ali / Gallery 8 | $600 | Mohammad Manasra |
| 4/4/2011 | Nael Ali / Gallery 8 | $780 | Mohammad Manasra |
| 4/13/2011 | Nael Ali / Gallery 8 | $755 | Mohammad Manasra |
| 5/24/2011 | Nael Ali / Gallery 8 | $400 | Mohammad Manasra |
| 9/22/2011 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 10/10/2011 | Nael Ali / Gallery 8 | $755 | Mohammad Manasra |
| 10/18/2011 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 10/30/2011 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |

| | | | |
|---|---|---|---|
| 5/14/2012 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 5/30/2012 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 6/13/2012 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 10/3/2012 | Nael Ali / Gallery 8 | $1200 | Mohammad Manasra |
| 11/13/2012 | Nael Ali / Gallery 8 | $350 | Mohammad Manasra |
| 12/18/2012 | Nael Ali / Gallery 8 | $750 | Mohammad Manasra |
| 1/15/2013 | Nael Ali / Gallery 8 | $750 | Mohammad Manasra |
| 3/21/2013 | Nael Ali / Gallery 8 | $851 | Mohammad Manasra |
| 4/28/2013 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 5/28/2013 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 6/11/2013 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 6/21/2013 | Nael Ali / Gallery 8 | $350 | Mohammad Manasra |
| 6/28/2013 | Nael Ali / Gallery 8 | $1250 | Mohammad Manasra |
| 8/20/2013 | Nael Ali / Gallery 8 | $550 | Mohammad Manasra |
| 10/8/2013 | Nael Ali / Gallery 8 | $1526 | Mohammad Manasra |
| 10/23/2013 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 3/26/2014 | Nael Ali / Gallery 8 | $500 | Mohammad Manasra |
| 4/15/2014 | Nael Ali / Gallery 8 | $750 | Mohammad Manasra |
| 6/27/2014 | Nael Ali / Gallery 8 | $2500 | Mohammad Manasra |
| 8/20/2014 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 9/18/2014 | Nael Ali / Gallery 8 | $1000 | Mohammad Manasra |
| 10/6/2014 | Nael Ali / Gallery 8 | $538 | Mohammad Manasra |
| 6/13/2012 | Nael Ali / Gallery 8 | $150 | Abdel A. Manassra |
| 6/26/2012 | Nael Ali / Gallery 8 | $600 | Abdel A. Manassra |

| 4/28/2013 | Nael Ali / Gallery 8 | $1000 | Abdel A. Manassra |
|---|---|---|---|
| 4/15/2014 | Nael Ali / Gallery 8 | $1000 | Abdel A. Manassra |
| 8/19/2014 | Nael Ali / Gallery 8 | $1000 | Abdel A. Manassra |
| 5/12/2012 | Nael Ali / Galleria Azul (NM) | $800 | Abdel A. Manassra |
| 3/21/2013 | Nael Ali / Galleria Azul (NM) | $500 | Abdel A. Manassra |
| 3/21/2013 | Nael Ali / Galleria Azul (NM) | $500 | Abdel A. Manassra |
| 4/15/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Abdel A. Manassra |
| 4/25/2013 | Nael Ali / Galleria Azul (NM) | $1000 | Abdel A. Manassra |
| 5/23/2014 | Nael Ali / Galleria Azul (NM) | $900 | Abdel A. Manassra |
| 8/18/2014 | Nael Ali / Galleria Azul (NM) | $1000 | Abdel A. Manassra |
| 9/16/2014 | Nael Ali / Galleria Azul (NM) | $2220 | Abdel A. Manassra |
| 1/12/2014 | Nael Ali / Galleria Azul (AZ) | $1500 | Abdel A. Manassra |

At the Albuquerque Flea Market on October 19, 2014, I observed Manasra retrieve several plastic bags containing jewelry from the Original Market Van. While Manasra was retrieving the items, I observed that the van contained a large inventory of packaged jewelry, secured in a cardboard box. I also noted that the jewelry Manasra retrieved from the van was consistent with the Sterling imported pieces I had observed during the July 30, 2012, Sterling importation inspection. Specifically, I observed a ring which I knew to be consistent with a Sterling imported ring. Upon, handling the item, I observed the "cornrow" design and stamped leaf symbol on the inside of the ring, which I had observed on several Sterling imports, during the July 30, 2012 inspection.

Manasra told me that he gets all his jewelry from Gallup, NM. And he also said that his brother buys the jewelry. When questioned about which tribes make the jewelry, Manasra motioned to jewelry in the cases and pointed out pieces that he claimed were made by the Navajo and Zuni. I then asked to see the "cornrow" ring for a second time. Manasra described it as, "…corn cut." I asked if the ring was a Zuni item, but Manasra corrected me and said, "No, that's Navajo."

I then asked to see another ring displayed in one of the cases which I knew to be consistent with a Sterling import. Specifically, I recognized the overall design of the ring and the "OY," initials on the inside of the item.